UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **YOCASTA BRENS,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TEACHERS COLLEGE, COLUMBIA UNIVERSITY,**<br><br>**Defendant.** | Civil Action No.<br><br>**ECF CASE**<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Yocasta Brens, by way of Complaint against Defendant Teachers College, Columbia University, alleges as follows:

## PARTIES

1.      Plaintiff Yocasta Brens ("Ms. Brens" or "Plaintiff") is a citizen of New Jersey.

2.      Upon information and belief, Defendant Teachers College, Columbia University ("Teachers College" or "Defendant") is a not-for-profit corporation organized pursuant to the laws of the State of New York with a principal place of business at 525 West 120th Street, New York, NY 10027.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(1) (diversity) because Plaintiff is a citizen of New Jersey, Teachers College is a citizen of New York, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because, as set forth *infra*, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

1

5.      Alternatively, because Plaintiff and/or Defendant had contacts with this judicial district which would be sufficient to subject them to personal jurisdiction if this district were a separate state, venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (d).

**FACTS COMMON TO ALL COUNTS**

6.      Teachers College is the graduate school of education for Columbia University.

7.      From February 2019 until March 17, 2021 ("the Relevant Time Period"), Ms. Brens was Teachers College's Director of the Office of International Students Services.

8.      During the Relevant Time Period, Teachers College had twenty (20) or more employees.

9.      During the Relevant Time Period as well as in the prior fiscal year, Teachers College had annual revenue in excess of one (1) million dollars.

10.     As Director of the Office of International Students Services, Ms. Brens' duties and responsibilities included serving as the Principal Designated School Official (PDSO) for the F-1 program as well as the Responsible Officer (RO) for the J-1 Exchange Visitor Program.

11.     In this capacity, she provided supervision, training, and support to Teachers College's Alternate Responsible Officers (AROs) and Designated School Officials (DSOs).

12.     Ms. Brens was also responsible for developing and implementing policies and procedures relating to the enrollment and retention of Teachers College's approximately 1,200 international students and 100 international scholars.

13.     Ms. Brens served as Teachers College's liaison to various governmental agencies including the Department of Homeland Security (DHS), Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), Department of State (DOS), and the U.S. Citizenship and Immigration Services (USCIS).

14.     She also planned and oversaw the implementation of a bi-annual orientation for

2

newly admitted international students.

15.      Among her accomplishments was the implementation of Sunapsis, which was a

web-based system that enhanced Teachers College's ability to remain compliant with federal

regulations pertaining to the enrollment of international students and scholars.    She also

expanded and improved the department's web site and increased outreach and collaboration with

internal and external stakeholders.

16.      During the COVID-19 crisis, Ms. Brens ensured that Teachers College moved in

a swift and seamless fashion to providing online services.

17.      In all respects, Ms. Brens' performance met or exceeded Teachers College's

reasonable expectations.

18.      During the Relevant Time Period, Teachers College had a policy entitled "Policy

Against Retaliation and for Protection of Whistleblowers" ("the Whistleblower Policy")

(available at https://www.tc.columbia.edu/policylibrary/policies/whistleblower-policy-1242041).

19.      As set forth in the Whistleblower Policy, Teachers College

> strives to operate ethically and lawfully and **expects** all faculty, trustees,
> administrators, staff, students, volunteers and visitors (collectively, the "College
> Community") to conduct their activities in accordance with College policies and
> applicable law. The College encourages and **expects** all members of the College
> Community to report suspected misconduct within the College through supervisors
> or other established channels.  No member of the College Community may interfere
> with the good faith reporting of apparent or suspected misconduct or intimidate or
> retaliate against any member of the College community who makes such a report in
> good faith.
>
> No individual who in good faith reports any action or suspected action taken by or
> within the College that is illegal, fraudulent or in violation of any College [policy] or
> cooperates in good faith with a College investigation of such a report shall be
> subject to retaliation, including harassment, intimidation, discrimination or any other
> adverse employment, academic or educational consequence, as a result of making a
> report or cooperating with the College investigation.  Teachers College will take
> whatever action is necessary and appropriate to address violations of this policy.
>
> (emphasis added).

20.     On more than one occasion in or about the fall and winter of 2019, Teachers College's Executive Director of the Office of International Affairs, Portia Williams, requested that Ms. Brens and her staff process immigration documents on behalf of a group of potential students from South Africa without the necessary documentation, including evidence of funding and full-time engagement in a prescribed program, as required by federal regulations.

21.     Ms. Williams made these requests notwithstanding the fact that, on several occasions, Ms. Bren had explained the details of the South African program and what would be needed to apply for J-1 status.

22.     During a meeting in or about December 2019, Teachers College's Provost, Dean and Vice President for Academic Affairs, Dr. Stephanie J. Rowley, accused Ms. Brens of being too "inflexible" in the application of federal regulations.

23.     Pursuant to the Whistleblower Policy, at the end of 2019, Ms. Brens filed a complaint against the Executive Director of the Office of International Affairs, Portia Williams.

24.     On September 9, 2020, Dr. Rowley informed Ms. Brens that she would be reporting to the aforementioned Ms. Williams.

25.     Ms. Brens objected to this move and reminded Dr. Rowley of the existing conflict between her and Ms. Williams.

26.     Although Dr. Rowley stated that she would consider these factors, when they met again on September 15, 2020, she informed Ms. Brens that Teachers College nevertheless intended to move forward with the reorganization.

27.     On October 6, 2020, Ms. Brens noted that Ms. Williams had "still refused to provide health insurance documentation" required under federal law.

28.     On February 2, 2021, Ms. Brens met with the Vice President of Administration, Lisa Seales ("the February 2, 2021 Meeting").

29.     During the February 2, 2021 Meeting, Ms. Brens stated that she and her staff were frequently asked to "bend" the rules in order to keep the enrollment of international students at a high level.  Specifically, she stated that had been directed to i) certify that certain international students were enrolled full-time when they were, in fact, not full-time students; ii) extend students' immigration documents when they did not qualify based on federal requirements; and iii) ignore the lack of English language proficiency, which is also a federal requirement.

30.     A month and a half later, on March 17, 2021, Ms. Williams and Director of Human Resources Svetla Eneva informed Ms. Brens that her employment was being terminated.

**FIRST CAUSE OF ACTION**
**(Violation of Section 715-b of the New York Not-for-**
**Profit Corp. Law.)**

31.     Plaintiff realleges each of the allegations set forth above as if set forth herein at length.

32.     New York Not-For-Profit Corporation Law § 715-b is intended to protect from retaliation or adverse employment consequences employees who in good faith report any action or suspected action taken by or within a not-for-profit corporation that is illegal, fraudulent, or in violation of any adopted policy of the corporation.

33.     As set forth supra, at the end of 2019 and then again on February 2, 2021, Ms. Brens reported actions taken by or within Teachers College that were illegal, fraudulent and/or in violation of the Whistleblower Policy as described in paragraphs 18-19, supra.

34.     In retaliation for these complaints, Ms. Brens' employment was terminated.

35.     Defendant's actions were in violation of Section 715-b of the New York Not-for-Profit Corp. Law.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

36.     Plaintiff realleges each of the allegations set forth above as if set forth herein at length.

37.     As set forth in the Whistleblower Policy as described in paragraphs 18-19, supra, Teachers College required all employees "to conduct their activities in accordance with College policies and applicable law" and "to report suspected misconduct …"

38.     In exchange, Teachers College promised that "[n]o individual who in good faith report[ed] any action or suspected action taken by or within the College that [wa]s illegal, fraudulent or in violation of any College [policy] or cooperate[d] in good faith with a College investigation of such a report [would] be subject to retaliation …"

39.     Because it made Ms. Brens (and its others) employees aware of an express written policy limiting Teachers College's ability to take adverse employment actions, and Ms. Brens relied on that policy to her detriment, a binding and enforceable contract was created.

40.     As a result of Teachers College's breach of this contract, Ms. Brens has been damaged.

## THIRD CAUSE OF ACTION
### (Promissory estoppel)

41.     Plaintiff realleges each of the allegations set forth above as if set forth herein at length.

42.     The Whistleblower Policy as described in paragraphs 18-19, supra constituted a promise upon which Plaintiff reasonably relied to her detriment.

43.     As a result of said reliance, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff Yocasta Brens demands judgment against Defendant Teachers College Columbia University on the First Cause of Action, Second Cause of Action, and Third Cause of Action and seeks the following relief: (i) compensatory damages for loss of wages (back pay and front pay) and lost benefits and emotional distress damages, including but not limited to, pain, suffering, stress, humiliation, and mental anguish; (ii) punitive damages; (iii) attorneys' fees; (iv) costs of suit; (v) prejudgment interest of 9% as required under the civil practice law and rules.; and (vi) such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Yocasta Brens demands trial by jury on all claims and issues so triable.

Dated: New York, New York
     May 18, 2022

**JAVERBAUM WURGAFT HICKS KAHN WIKSTROM & SININS, P.C.**


By: /s/ Andrew Moskowitz
    Andrew M. Moskowitz, Esq.

589 Eighth Avenue-21st Floor
New York, NY 10018
(212) 596-7656
amoskowitz@lawjw.com

Attorneys for Plaintiff Yocasta Brens